FILED
2013 May-16  PM 04:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ELEAZIER BANKS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **2:12-cv-01682-MHH** |
| | ) | |
| **BIRMINGHAM BOARD OF** | ) | |
| **EDUCATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

In this action, plaintiff Eleazier Banks and seventeen other named plaintiffs, on behalf of themselves and similarly situated non-exempt employees of 49 schools in the Birmingham school system, bring this action against the Birmingham Board of Education ("the Board") under the Fair Labor Standards Act ("FLSA") to correct alleged violations of the overtime provisions of the statute during the three years preceding the filing of this action.  Pending before the Court is the named plaintiffs' motion to "withdraw their consent; opt-out; or otherwise dismiss the instant case without prejudice so that the named plaintiffs may file their respective claims in the ongoing case of Murray v BBOE, Case No 2:13-cv-0822," a case which Tommy Murray filed on May 1, 2013.  (*Banks* Doc. 43; *Murray* Doc. 1).  The Board joins the named plaintiffs in urging the Court to dismiss this action.  In their submissions regarding dismissal, none of the parties

mentions the procedural posture of the case or the implications of the policies that animate the Fair Labor Standards Act.  Having considered the plaintiffs' bare-boned motion, the Board's brief regarding dismissal and the entire record, the undersigned magistrate judge recommends that the Court deny the motion to dismiss for the reasons stated below.

## Background

Banks and the other seventeen plaintiffs who have opted-in to this action are non-exempt employees at 11 different schools in the Birmingham school system. (Docs. 7-1 through 7-4).[1]  They are members of the schools' Child Nutrition Plan staffs, custodial staffs, and secretarial staffs.  They allege that despite the Board's written policy regarding overtime compensation, as a matter of practice, the Board routinely fails or refuses to compensate non-exempt employees for overtime.[2]  The

_____

[1]The schools are N. Roebuck Elementary, Powderly Elementary, Washington Elementary, Woodlawn High School, Putnam Middle School, Bertam A. Hudson K-8, Martha Gaskins Middle School, South Hampton Elementary, Ossie Ware Mitchell Middle School, and William Hooper Councill Elementary.  (Docs. 1-1; 4-1- through 4-16; 7-1 through 7-4).

[2]The Board's policy concerning overtime compensation is memorialized in writing and provided to Board employees.  Adopted in 1996 and revised in 2004, the policy provides:

> Employees who are not exempt from the provisions of the Fair Labor Standard Act shall be scheduled for overtime work only with the prior approval of the employee's direct supervisor and the Superintendent.  For the purposes of overtime compensation, only hours worked in excess of forty during a work week will be counted.  Employees who work overtime shall have a choice between being compensated pursuant to the provisions of the Fair Labor Standards Act, or being granted compensatory time pursuant to the provisions of the Fair Labor Standards Act.  Accurate records of overtime shall be documented and approved by the immediate

Board currently employs 873 non-exempt employees at the 49 different schools in the school system.[3]

Seeking compensation for alleged unpaid wages, Eleazier Banks and Carley Dawson filed this lawsuit on April 25, 2012.  (Doc. 1).  Banks and Dawson asked the Court "to find that this action can proceed as a collective action pursuant to 29 U.S.C. § 216(b)."  (Doc. 1, ¶ 21).  They alleged that the Board, "acted or refused to act on grounds generally applicable to the plaintiffs and other non exempt similarly situated employees, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  (Doc. 1, ¶36).  Plaintiffs asserted that the Board, "routinely withheld from Plaintiffs, relevant and necessary information which would advise each and every potential Plaintiff of their entitlement to overtime pay for all hours worked in excess of 40 hours per week," such that "the applicable statute of limitations period governing

---

supervisor.  Those employees who are exempt from the provisions of the Fair Labor Standards Act will not receive overtime compensation nor will they receive compensatory time off.

(Doc. 26-1, p. 5; Tr. Def. Ex. 1).

[3]Overall, the Board employs more than 1,000 non-exempt employees in the Birmingham public school system, but not all of those employees work in the 49 schools.  (Doc. 26-1, ¶ 2). For example, some non-exempt employees work in mechanic shops that service the system's school buses.  At the February 1, 2013 hearing regarding conditional class certification, plaintiffs clarified that they are pursuing their action on behalf of only the non-exempt employees who work within the 49 schools in the system.  Following the February 1, 2013 hearing, counsel for the Board advised the Court that the Board employs 873 non-exempt employees at the 49 different schools in the school system.

FLSA actions, 29 U.S.C. § 255(a) is tolled for as long as Defendant engaged in such conduct and equitably estops Defendant from raising the statute of limitations as a bar to any claims asserted herein." (Doc. 1, ¶¶ 38-39). Banks and Dawson demanded actual damages, liquidated damages, costs, attorney fees and declaratory and injunctive relief. (Doc. 1, pp. 10-12).

Five days after they filed their lawsuit and before the Board answered, Banks and Dawson filed an amended complaint. (Doc. 4). Eleven (11) purported Board employees joined the action as named plaintiffs. (Doc. 4, ¶¶ 7-17). As in the original complaint, Banks, Dawson and the 11 new named plaintiffs asserted their claims on behalf of a putative class consisting of, "all current and former employees of [the Board] and wheresoever's located who were employed at any time during the applicable limitations period or during such period as the Court may designate pursuant to equitable tolling of the limitations period and who worked similar to those that Plaintiffs performed, whose rights were violated because of Defendant's knowing, intentional and willful failure to pay them the regular and overtime compensation to which they were entitled, in violation of the FLSA." (Doc. 1, ¶48). The plaintiffs demanded damages and equitable relief, and each of the new plaintiffs submitted an opt-in form in conjunction with the amended complaint. (Doc. 4, pp. 18-22; Docs 4-1 through 4-26).

Again, on May 14, 2012, before the Board appeared, the plaintiffs amended

their complaint, adding five more named plaintiffs, bringing to 18 the total number of named plaintiffs.  (Docs. 7, ¶¶ 18-22; 7-3; 7-4).  The five new plaintiffs filed opt-in forms with the Court.  (Docs. 7-3; 7-4).  The Board answered the Second Amended Complaint on May 24, 2012.  (Doc. 9).  The Board admitted that each of the 18 named plaintiffs was a Board employee.  (Doc. 9, ¶¶ 5-22).

On November 21, 2012, the plaintiffs filed a motion to conditionally certify a plaintiff class, and they asked the Court to approve an opt-in notice for prospective plaintiffs.  (Docs. 17; 17-1).[4]  The parties briefed the motion for conditional class certification, submitted various evidentiary materials related to the motion, and filed motions regarding the evidentiary submissions.  (Docs. 23, 25-29).

Less than one week after the 18 named plaintiffs moved for conditional certification of an opt-in plaintiff class, on November 26, 2012, the plaintiffs moved to amend their complaint again.  In the proposed amended complaint, the 18 named plaintiffs sought to add nine (9) more plaintiffs, and they asked the Court to allow them to name as defendants the individual members of the Board. (Doc. 19).  The Board opposed the motion to amend the complaint.  (Doc. 24).

---

[4] Contemporaneously with the November 21, 2012 motion for conditional class certification, the named plaintiffs filed a motion to amend the complaint to add nine (9) new plaintiffs.  (Doc. 16).  The proposed new plaintiffs did not submit opt-in forms.  The plaintiffs withdrew this motion to amend the complaint on November 26, 2012.  (Doc. 18).

On February 1, 2013, the Court heard argument regarding all of the pending motions.  In connection with the motion for conditional class certification, the Board presented the testimony of Arthur Watts, the Chief Financial Officer of the Birmingham Board of Education.  At the conclusion of the two hour hearing, the Court noted plaintiffs' counsel's request that the Court deny the plaintiffs' pending motion to add nine new plaintiffs if the Court decided to deny the plaintiffs' motion to add individual members of the Board as defendants. Plaintiffs' counsel expressed his interest in filing a separate lawsuit on behalf of the nine proposed plaintiffs if the Court denied the plaintiffs' motion to add the individual Board members to this action so that the potential opt-in plaintiffs could pursue FLSA claims against each member of the Board.  The Court requested additional briefing concerning the plaintiffs' motion to add as defendants each member of the Board.  The Court took the pending motions under submission.[5]

On April 24, 2013, the named plaintiffs withdrew their motion for leave to file the amended complaint adding nine new opt-in plaintiffs and attempting to add as defendants each member of the Board.  (Doc. 19; Doc. 37).  The Court deemed the motion moot.  (Doc. 38).

Five days later, on April 29, 2013, the parties filed a Joint Stipulation of

---

[5] As of the date of this Report and Recommendation, the transcript of the February 1, 2013 conditional class certification hearing is not final.

Dismissal.  The document states simply, "COMES NOW the parties, by and through their respective attorneys of record and jointly stipulate to the dismissal of all claims asserted in the above-captioned case, without prejudice, costs taxed as paid." (Doc. 39).  Upon receipt of the purported stipulation of dismissal, the Court set a phone conference with the parties.  (Doc. 40).  The Court began the conference by advising the parties that because the case is an FLSA action, they canot settle the case and dismiss it without moving for court approval of the proposed settlement.  The parties explained that they had not settled.  Plaintiffs' counsel stated that he had filed a new FLSA lawsuit and that the named plaintiffs intended to move their claims in *Banks* to the new lawsuit.[6]  The Court questioned the parties' ability to dismiss the *Banks* FLSA action, given its procedural posture. The Court directed the parties to file, within seven days, briefs that provided authority either for the parties to stipulate to the dismissal of the pending FLSA action or for the Court to resolve the action on a motion to dismiss.  The Court struck the stipulation of dismissal.  (May 6, 2013 docket entry; Doc. 41).

The Board filed a brief in which it presented its view of the dismissal issue. Rather than filing a brief regarding the dismissal issue, the 18 named plaintiffs filed a motion to dismiss in which they "agree[d]" with the arguments in the

---

[6] On May 1, 2013, Tommy Murray, an individual plaintiff, filed an FLSA collective action against the Birmingham Board of Education.  That case is styled *Murray v. BBOE*, CaseNo. 2:13-CV-0822-KOB.

Board's brief and asked the Court to, "enter an order allowing the plaintiffs to 'opt out' of the instant litigation so that they may 'opt in' the case of Murray v Birmingham Board of Education." (Doc. 43, p. 2). Alternatively, the plaintiffs asked the Court to reconsider its order striking the joint stipulation of dismissal. (Doc. 43, p. 2). The dismissal issue is now ripe for resolution.

## Discussion

The plaintiffs have created a procedural quagmire. They seek to extricate themselves from it by hastily dismissing this FLSA collective action and pursuing their claims in a new FLSA lawsuit. Plaintiffs' seemingly simple dismissal is not simple at all.

In its response to the Court's request for legal authority addressing the procedural context for the motion to dismiss and the underlying policy considerations that concern the Court, policy considerations that the Eleventh Circuit Court of Appeals addressed in *Lynn Foods Stores v. United States*, 679 F.2d1350, 1353 (11th Cir. 1982), the Board stated:

> Plaintiff's Counsel expressed his intentions on the conference call and by subsequent correspondence to Defendant, to file a new FLSA case, and has already filed such a case, *Tommy Murray vs. Birmingham Board of Education 2:12-cv-0082-KOB*. Plaintiff's counsel, Jerome Tucker has advised he intends to add the parties in the present case to the new case if and when this matter is dismissed. Historically, the *Lynn Foods* standard was used for various reasons, including 1) to protect employees from being taken advantage of in a settlement agreement, or 2) to ensure that the exact terms of the settlement were ratified by the

Court and the employer could not later be brought to court on the same alleged facts, if an out of Court settlement had been previously reached. Neither of these situations is present in the *Banks* case.

. . .

Based on the situation here, the employees (Plaintiffs) are NOT being taken advantage of by the employer, nor is the employer (Defendant) at risk of being forced to pay a claim twice for a single set of alleged facts, as this case is not a Stipulation for Settlement, but a Stipulation for Dismissal. This dismissal is not a ruse for an out of Court settlement, but it is a dismissal to extinguish any further action in this case.

Furthermore, as the Defendant, in this matter, it would be a near impossibility that we would ever request or argue to the Court that we wish to continue litigation against our interest.

. . .

No compromise of disputed issues is involved in the dismissal; furthermore, there is no settlement of underlying issues. The FLSA claims of the Plaintiffs are being raised in other litigation, and the employer, Defendant is in no danger of paying repeatedly for the same allegations and the deterrent effect of FLSA is not diminished by this dismissal. Based on the above arguments, the Defendant respectfully requests that the Court grant the Joint Stipulation of Dismissal filed in this matter.

(Doc. 42, pp. 1-2).  The 18 named plaintiffs offered the following:

1.    The plaintiffs filed their initial consents and authorizations to become party plaintiffs in this lawsuit in or about April 30, 2012.

2.    Each of the named plaintiffs have, in effect, withdrawn their original consent by executing a new authorization and directing their attorney of record to file their respective claims in the above named case.

3.    There was no compromise; settlement; or release. There was no

tender of or payment of any money or benefit to the individual
plaintiffs or their attorney of record in this cause. (See Lynn's
Food Stores, Inc. v United States, 679, f.2d 1350 (11Th Cir,
1982).

4.    Plaintiffs agree with the arguments made by Defendant in its brief
      filed on Monday, May 13, 2013.

(Doc. 43, pp. 1-2).

The Court understands that the parties have not settled the FLSA claims
in *Banks*, and the Court has confirmed that Tommy Murray, a purported Board
employee who is not a plaintiff in *Banks*, filed a separate FLSA collective
action against the Board on May 1, 2013.  Neither of these points addresses
the concerns that the Court presented to the parties.

As the Court pointed out in its discussion with the parties, FLSA
actions are not run-of-the-mill lawsuits.  The policy considerations that
animate the FLSA provide an important backdrop for these actions.
"Congress enacted the FLSA in 1938 with the goal of 'protect[ing] all covered
workers from substandard wages and oppressive working hours.'"
*Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012) (quoting
*Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981));
*see also* 29 U.S.C. §202.  Congress designed the FLSA "to ensure that *each*
employee covered by the Act would receive '[a] fair day's pay for a fair day's
work' and would be protected from 'the evil of 'overwork' as well as

'underpay.'" *Barrentine*, 450 U.S. at 739 (emphasis in original). "FLSA

provisions are mandatory; the 'provisions are not subject to negotiation or

bargaining between employer and employee.'" *Silva v. Miller*, 307 Fed. Appx.

349, 351 (11th Cir. 2009) (quoting *Lynn's Food Stores, Inc. v. U.S. ex. Rel.*

*U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982)). To fulfill the

legislative intent undergirding the FLSA, courts follow procedures in FLSA

actions that generally are unnecessary in other actions. For example, courts

must review and approve FLSA settlements. *Hogan v. Allstate Beverage Co.,*

*Inc.*, 821 F. Supp. 2d 1274, 1281 (M.D. Ala. 2011) ("Settlement of an action

under the FLSA differs from settlement of other claims.").

     Courts that have considered motions to dismiss FLSA actions have

recognized that the policy considerations that color a court's evaluation of an

FLSA settlement may similarly shade a court's analysis of a motion to

dismiss. For example, in *Perez-Nunez v. North Broward Hospital District*,

609 F. Supp. 2d 1319 (S.D. Fla. 2009), the court vacated a joint stipulation of

voluntary dismissal with prejudice. The court did so in circumstances similar

to the instant case:

> On March 17, 2009, the Parties filed a Joint Stipulation of
> Voluntary Dismissal with Prejudice (dkt # 40), stating that 'all
> claims set forth in this action between them shall be dismissed
> with prejudice, with each party bearing [its] own attorneys' fees
> and costs.' On March 18, 2009, this Court entered an Order (dkt #

43) which noted that '[p]ursuant to [*Lynn's Food*], claims for back wages arising under the FLSA [Fair Labor Standards Act] may be settled only with approval of the Court or the Secretary of Labor.' The Order instructed the Parties to file a copy of the settlement agreement and stated that '[i]f the Court approves the settlement, the Court will enter a final order of dismissal with prejudice.' In response to the Order, Defendant filed a Notice to the Court (dkt # 44) stating that 'no settlement ... has been reached,' but rather Plaintiff has represented to Defendant 'that she no longer desires to pursue this action.' Defendant argued that since 'there has been no settlement or resolution of claims under the [FLSA], there is no settlement or compromise for the Court to consider for fairness, as [*Lyyn's Food]* only applies to 'compromises' of FLSA claims." (Def.'s Notice to the Court at 1.)

This Court rejects Defendant's position that a court need not approve the terms under which a plaintiff may dismiss an FLSA claim with prejudice . . . If the dismissal sought by the Parties were without prejudice, the Court would agree that approval would not be necessary, since Plaintiff would not be foreclosing her ability to vindicate any FLSA claim she may have by refiling at a later time. However, since the proposed dismissal would be with prejudice, and would thus preclude plaintiff from re-filing her FLSA claim, it cannot be granted without this Court's approval.

*Id.* at 1319-21 (citations omitted); *see also Kerr v. Powerplay Arcade, Inc.,* 2007 WL 3307091, at *1 (M.D.Fla. Nov. 6, 2007) (same).

Were this an individual FLSA claim, *Perez-Nunez* would end the inquiry because the parties wish to dismiss *Banks* without prejudice. Were this an individual action, the Court would permit dismissal without prejudice. But this is not an individual action. It is a putative collective action that has

been pending for just over one year.  Since Banks and Dawson filed this

lawsuit, 16 of their co-employees have filed opt-in notices.  In *Adams v.

School Bd. of Hanover County*, 2008 WL 5070454 (E.D.Va. Nov. 26, 2008),

the district court observed that, "[n]o published case discusses the procedures

a court must undertake when a party who has opted-in seeks to withdraw."  *Id.*

at *17.

    The few opinions that address an FLSA opt-in plaintiff's motion to

withdraw make clear that FLSA plaintiffs may neither casually invoke the opt-

in mechanism nor subsequently remove themselves from an FLSA action

without seeking leave of court.

> Congress amended the FLSA in 1947 to include the opt-in provision in
> order to prevent 'large group actions ... brought on behalf of employees
> who had no real involvement in, or knowledge of, the lawsuit.'
> *Cameron-Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1248
> (11th Cir. 2003) (citation omitted). Thus, the opt-in provision ensures
> that 'no person can become a party plaintiff and no person will be
> bound by or may benefit from judgment unless he [or she] has
> affirmatively 'opted into' the class; that is, given his [or her] written,
> filed consent.' *LaChapelle v. Owens-Ill, Inc.,* 513 F.2d 286, 288 (5th
> Cir. 1975) . . . When a party files written consent to opt-in, as the
> moving parties have already done, they become parties to the litigation .
> . . The Fourth Circuit has noted that "[t]he purpose of the consent forms
> is 'to make ... uncertain plaintiffs certain, and actual participants, so that
> defendants could know the parties and the charges with which they were
> to be faced." [*Lee v. Vance Exec. Protection, Inc.*, 7 Fed. Appx. 160
> (4th Cir. 2011)] at *6 (quoting *Deley v. Atl. Box & Lumber Corp.,* 119
> F.Supp. 727, 728 (D.N.J.1954).

*Adams*, 2008 WL 5070454 at *17-18.

In *Adams*, the district court decided that because it, at the parties'

request, had not certified an FLSA collective class yet, there was "no bar

against these Plaintiffs choosing to withdraw their opt-in status." *Adams*,

2008 WL 5070454 at *18.  There were, however, consequences.  "[U]pon

opting out, the withdrawing Plaintiffs should lose both the detriment and any

benefit of participating in this case."  The specific consequences were these:

> [The withdrawing plaintiffs] should not be subject to any tolling
> agreement governing participants in this case. They cannot rejoin this
> litigation. Indeed, should the withdrawing Plaintiffs seek similar redress
> in the future, it seems impossible that they do so absent consideration of
> their longstanding participation in this case, especially because this case
> is ongoing.

*Id.* at *19.  In reaching this conclusion, the district court considered its power,

"'to manage the process of joining multiple parties in a manner that is orderly,

sensible, and not otherwise' in violation of statutes or rules. *Hoffmann-La*

*Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480

(1989).  Because of a potential for abuse, a court has 'both the duty and the

broad authority to exercise control ... governing the conduct of counsel and

the parties.' *Id.* at 171." *Id.*

Relying on similar considerations, the district court in *In re Family*

*Dollar FLSA Litigation*, 2012 WL 370068 (W.D.N.C. Feb. 3, 2012), elected to

treat an opt-in plaintiff's motion to withdraw as a Rule 41(a) motion to dismiss and to apply the Fourth Circuit's standard for a Rule 41(a)(2) motion to dismiss to the motion to withdraw.

> Without deciding the issue of whether Plaintiff may withdraw her notice of consent as a mechanism to exit this litigation, the Court will construe Plaintiff's notice of withdrawal of consent as a motion for voluntary dismissal pursuant to Rule 41(a). Rule 41(a)(2) provides that a Court may dismiss an action at the Plaintiff's request 'on terms that the court considers proper.' Fed.R.Civ.P. 41(a)(2).
>
> In deciding whether to dismiss without prejudice under Rule 41(a), 'a district court should consider factors such as the opposing party's effort and expense in preparing for trial, excessive delay and lack of diligence on the part of the movant, and insufficient explanation of the need for a voluntary dismissal, as well as the present stage of litigation.' *Howard v. Inova Health Care Servs.,* 302 Fed. App'x 166, 178–179 (4th Cir.2008) (internal quotations and citations omitted).

*Id.* at *1-2.  Applying the *Howard* factors, the court held that because there was "[no] evidence of undue delay or of insufficient explanation for Plaintiff's desire to withdraw from this litigation," the court would dismiss the opt-in plaintiff without prejudice and without assessment of costs.

*Adams* and *Family Dollar* provide guidance concerning the factors that the Court should consider in weighing the 18 named plaintiffs' motion to dismiss in this case, but the ultimate holdings in those cases are of limited value because the procedural context in which the plaintiffs' motion to dismiss arises in this case is much different from the circumstances

surrounding the motions in *Adams* and *Family Dollar*.  Here, the plaintiffs'
FLSA claims have been pending for more than a year.  The Court has prepared
for and conducted an evidentiary hearing on the plaintiffs' motion for
conditional certification of an FLSA opt-in class.  The Court has evaluated the
evidence that both parties presented, and the Court is in the process of
drafting an order that resolves not only the plaintiffs' motion for conditional
certification but also the related motions to strike.  The only explanation that
the 18 named plaintiffs offer for their motion is that they wish "to 'opt out' of
the instant litigation so that they may 'opt in' the case of Murray v
Birmingham Board of Education," the FLSA action that one of their co-
employees filed on May 1, 2013.  (Doc. 43, p. 2; *Murray*, Doc. 1).  The
*Murray* action mimics *Banks*; it differs only in that Mr. Murray sued not only
the Board but also each member of the Board in his or her official capacity.
(*Murray*, Doc. 1).

In many ways, the pending motion is analogous to the motion to
withdraw class allegations in *Braud v. Transport Services of Illinois*, 2009
WL 413404 (E.D. La. Feb. 17, 2009).  There, on the eve of an evidentiary
hearing concerning the named plaintiffs' motion for Rule 23 class
certification, the plaintiffs filed a motion to withdraw their class allegations,
ostensibly because they thought the class claims should proceed in a parallel

state action.  Finding that the motion was "more aptly characterized as a Rule 41 motion to dismiss class claims without prejudice," the district court denied the motion.  In doing so, the court reasoned that, "there have been substantial proceedings in this case in this court."  *Id.* at *1.  "Plaintiffs filed this action as a class and have made diligent attempts to seek certification of the class in this Court."  *Id.*  The court rejected the notion that it would benefit if it dismissed the class allegations:

> Plaintiffs contend that withdrawal of their class claims would serve to better conserve judicial resources than a ruling on their motion for class certification. This Court is not persuaded. By all accounts, the matter is ripe for determination now. The motion shall either be submitted on the briefs and affidavits or pursuant to a brief hearing. The undersigned is already informed of many of the relevant facts and circumstances, having recently conducted a bifurcated trial on issues pertaining to liability and third party fault.

*Id.*  Expressing concern for absent class members, the court stated:

> The basis of the dismissal sought is to recommence the action in state court which promises even more delay and potential prejudice to unknown members of the putative class claiming physical injury . . . , the undersigned is troubled by the real possibility that dismissing the claims in this case will effectively result in the dismissal of any potential class of individuals who allegedly sustained physical injuries as a result of the August 19, 2004 chemical spill. Most notably, the *Marvic Thompson* Plaintiffs amended their complaint in Civil District Court deleting any claim for *physical* injuries.

*Id.* at *1-*2.

The reasoning in *Braud* applies equally here.  There have been substantial proceedings in this case in this court.  The 18 named plaintiffs have pursued this action as a collective FLSA action, and they have made diligent attempts to seek conditional certification of the class.  (*See* Docs. 17, 23, 25, 27, 29).  Neither the plaintiffs nor the Board reasonably may contend that dismissing this case would conserve judicial resources.  The motion for conditional class certification not only is ripe for consideration; the Court is in the process of drafting an order regarding that motion and the other pending motions in this action.[7]  Until the plaintiffs withdrew their motion to amend the complaint to add the individual Board members, the Court was prepared to rule on the motion, and that ruling would have addressed issues with respect to the individual Board members that are likely to arise in the *Murray* action.[8]  The undersigned already is informed of many of the relevant facts and

---

[7] The Court would like to have issued its opinion already, but various matters have delayed release of the opinion.  *Barrus v. Dick's Sporting Goods, Inc.*, 465 F. Supp. 2d 224, 229 n. 1 (W.D.N.Y. 2006) ("Although magistrate judges do not have jurisdiction to authorize final certification of a class (*see* 28 U.S.C. § 636(b)(1)(A)), this Court has jurisdiction over motions seeking conditional class certification because they are only preliminary determinations and are not dispositive."); *Preda v. Boise Cascade, L.L.C.*, 532 F. Supp. 2d 234 (D. Mass. 2008) (same).  The Court would not allow its delay to prejudice the plaintiffs.

[8] Relying on *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991) and other authority, the Board consistently has maintained that the FLSA plaintiffs may not sue the individual members of the Board in their official capacities.  (Docs. 24, 30).  Before withdrawing their motion to amend the complaint, the 18 named plaintiffs argued that Alabama law authorizes suit against the individual Board members in their official capacities.  (Doc. 31).  It is very likely that the identical issue will arise in the *Murray* action.

circumstances, having recently conducted an evidentiary hearing and reviewed all of the evidence that the parties have submitted to date.[9]  The *Murray* action affords the named plaintiffs and potential class members nothing but delay and potential prejudice.  The undersigned is troubled by the real possibility that dismissing the FLSA claims in this case ultimately may effectively result in the dismissal of any potential FLSA claims by the named plaintiffs (and perhaps others).[10]  As the court in noted in *Adams*, there are consequences when opt-in plaintiffs withdraw from an FLSA action.  *Adams*, 2008 WL 5070454 at *18-19.  If the Court grants the motion to dismiss, the named plaintiffs may be "foreclosing [their] ability to vindicate any FLSA claim." *Perez-Nunez*, 609 F. Supp. 2d at 1320.

---

[9] That evidence includes Mr. Watts's admission that the principal of at least one school had a practice of having non-exempt employees "work off the clock."  (Evidentiary Hearing, draft transcript, pp. 46-48) ("I think we had a hard headed principal that did some terrible things that we wanted to correct immediately.").  Mr. Watts also acknowledged that he had heard about a situation in which a principal at another school insisted that a custodian work after the custodian had clocked out.  (*Id.* at 54-55).  At the evidentiary hearing, the Court discussed with the parties ways in which the potential opt-in class should be narrowed, based on the evidence presented at the hearing, and the Board provided to the Court following the hearing supplemental information relating to the scope of a potential class.

[10] The Court notes that plaintiffs' counsel has represented that the *Banks* opt-in plaintiffs, "have, in effect, withdrawn their original consent by executing a new authorization and directing their attorney of record to file their respective claims in the above named case."  (Doc. 43, ¶ 2). There is no evidence in the *Banks* record or the *Murray* record to substantiate that contention.

Perhaps this is why the Board has expressed no concern about prejudice, despite the time and resources that it has invested in this case. Although the Board has been defending this action for a year, has completed substantial briefing, and has participated in a significant hearing relating to conditional class certification, the Board asserts, "it would be a near impossibility that we would ever request or argue to the Court that we wish to continue litigation against our interest." (Doc. 42, p. 3). The Court understands the Board's position. Were this not an FLSA action, the Board's interests would hold greater sway when the Court balanced those interests against the Court's interest in conserving judicial resources and in managing litigation in an orderly, sensible way that prevents abuse. *Compare Potenburg v. Boston Scientific Corp.*, 252 F.3d 1253, 1255-56 (11th Cir. 2001) (in evaluating a Rule 41(a)(2) motion for voluntary dismissal, in most cases, ""[t]he crucial question to be determined is, Would the defendant lose any substantial right by the dismissal.' In exercising its 'broad equitable discretion under Rule 41(a)(2),' the district court must 'weigh the relevant equities and do justice between the parties in each case, imposing such costs

and attaching such conditions to the dismissal as are deemed appropriate.'"),[11] and *Hoffmann-La Roche Inc.,* 493 U.S. at 170.

But the nature of this action tips the scales in favor of denying the plaintiffs' motion to opt out of or to dismiss this action.  As stated, Congress adopted the FLSA because it wanted "to ensure that *each* employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of 'overwork' as well as 'underpay.'" *Barrentine*, 450 U.S. at 739 (emphasis in original).  In FLSA actions, courts routinely reject strategies sanctioned in other contexts if the strategy would "frustrate[] implementation of the 'private-public' rights granted by the FLSA and thwart[] Congress's intent to ensure widespread compliance with the statute." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010); *see also Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1264 (M.D. Ala. 2003) (recognizing that in adopting the FLSA, Congress sought to protect, "the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.'") (quoting *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706 (1945)); *Perez-Nunez*, 609

---

[11]Quoting *Durham v. Florida East Coast Ry. Co.,* 385 F.2d 366, 368 (5th Cir. 1967), and *McCants v. Ford Motor Co., Inc.,* 781 F.2d 855, 857 (11th Cir. 1986).

F. Supp. 2d at 1320 ("This Court rejects Defendant's position that a court need not approve the terms under which a plaintiff may dismiss an FLSA claim with prejudice").  The public's independent interest in assuring that the named plaintiffs are paid fairly, coupled with the Court's interest in avoiding duplication of effort and waste of judicial resources, counsels in favor of denying the plaintiffs' motion to dismiss.

## Conclusion

The 18 named plaintiffs' effort to withdraw from this putative collective FLSA action more than one year after the original plaintiffs filed this lawsuit and after the parties and the Court have invested significant time and resources in the action presents significant procedural and substantive issues. The Court offered the parties an opportunity to address these issues.  The parties either strategically or unwittingly argued around the crux of the matter. Based on the authority discussed in this report and its evaluation of the entire record, the undersigned magistrate judge recommends that the Court, in the exercise of its discretion, DENY the plaintiffs' motion to dismiss.[12]

---

[12] "The district court enjoys broad discretion in determining whether to allow a voluntary dismissal under Rule 41(a)(2)." *Potenburg*, 252 F.3d at 1255.

Any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk.  Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal.

Done, this the 16th day of May, 2013.

MADELINE HUGHES HAIKALA
U.S. MAGISTRATE JUDGE